Slip Op. 19-43

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **PERRY CHEMICAL CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | **Before: Claire R. Kelly, Judge** |
| **UNITED STATES,** | **Court No. 15-00168** |
| **Defendant.** | |

## OPINION AND ORDER

[Granting Defendant's partial motion to dismiss in part and denying it in part.]

Dated: April 5, 2019

<u>Kelly A. Slater</u>, Appleton Luff Pte Ltd, of Washington, DC argued for Perry Chemical Corporation. With her on the brief were <u>Edmund W. Sim</u> and <u>Jay Y. Nee</u>.

<u>Alexander O. Canizares</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief was <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Reginald T. Blades, Jr.</u>, Assistant Director. Of Counsel on the brief was <u>Melissa M. Brewer</u>, Attorney, Office of the Chief Counsel for Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge: Perry Chemical Corporation ("Perry") brings this action to seek a writ of mandamus compelling the U.S. Department of Commerce ("Commerce") to issue modified liquidation instructions to U.S. Customs and Border Protection ("CBP") directing reliquidation without regard to antidumping duties of all entries of polyvinyl alcohol ("PVA") from Taiwan produced and exported by Chang Chun Petrochemical Co. Ltd. ("Chang Chun") during the periods of March 1, 2012 to February 28, 2013 and March 1, 2013 to December 29, 2013. Compl. at ¶ 1, June 19, 2015, ECF No. 4. Defendant, the United

States, moves to dismiss, pursuant to United States Court of International Trade ("USCIT") Rules 12(b)(1) and 12(b)(6), respectively, Perry's complaint with respect to imports for which it alleges Perry sustained no injury, and with respect to the portion of Perry's complaint pertaining to imports of subject merchandise entered during the period of March 1, 2012 to February 28, 2013.  See Def.'s Partial Mot. Dismiss Pl.'s Compl. With Respect to Previously Liquidated Entries & Entries for Which Pl. Had No Injury at 1, 7–8, 9–15, Sept. 16, 2015, ECF No. 14 ("Def.'s Partial Mot. Dismiss").  Perry submitted a response opposing Defendant's motion.  See Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Compl. With Respect to Previously Liquidated Entries & Entries for Which Pl. Had No Injury, Nov. 6, 2015, ECF No. 20 ("Pl.'s Resp. Br.").  The court held oral argument on May 20, 2016.  See Appearance Sheet, May 23, 2016, ECF No. 30.  The parties also submitted supplemental briefing in response to the court's request.  See Def.'s Suppl. Br. Resp. Ct.'s July 19, 2016 Order, Sept. 6, 2016, ECF No. 34 ("Def.'s Suppl. Br."); Pl. [Perry's] Br. Resp. Def.'s Suppl. Br. Resp. Ct.'s July 19, 2016 Order, Sept. 27, 2016, ECF No. 35 ("Pl.'s Suppl. Resp. Br."); Def.'s Reply Suppl. Br. Resp. Ct.'s July 19, 2016 Order, Oct. 25, 2016, ECF No. 38 ("Def.'s Reply Suppl. Br."); see also Order, July 19, 2016, ECF No. 31.  On January 15, 2019, the case was reassigned pursuant to 28 U.S.C. § 253(c) and USCIT Rule 77(e)(4).  For the reasons that follow, Defendant's partial motion to dismiss is granted in part and denied in part.

## BACKGROUND

On September 27, 2004, Commerce initiated an investigation into imports of PVA from Taiwan.  See Initiation of Antidumping Duty Investigation: [PVA] from Taiwan, 69 Fed. Reg. 59,204 (Dep't Commerce Oct. 4, 2004).[1]  Commerce issued its preliminary determination on September 13, 2010, in which it calculated a preliminary antidumping margin of 3.02% for Chang Chun, an exporter of PVA and the only respondent participating in the investigation.  [PVA] from Taiwan, 75 Fed. Reg. 55,552, 55,558 (Dep't Commerce Sept. 13, 2010) (preliminary determination of sales at less than fair value and postponement of final determination) ("Preliminary Determination").  Pursuant to its findings in the Preliminary Determination, Commerce instructed CBP to suspend liquidation of entries of the subject merchandise beginning September 13, 2010, and to collect cash deposits or bonds at 3.02% ad valorem on shipments exported by Chang Chun to the United States.  See CBP Administrative Message No. 0257305 [attached as Ex. 3 to Compl.] at 2, 4, Sept. 14, 2010, ECF No. 4.

---

[1] The investigation ceased temporarily when the International Trade Commission, on October 22, 2004, made a preliminary finding that there was no reasonable indication of injury due to imports of the subject merchandise.  See Polyvinyl Alcohol From Taiwan, 69 Fed. Reg. 63,177 (Dep't Commerce Oct. 29, 2004).  The petitioner challenged the ITC's determination before this court, and on remand the ITC reversed its preliminary finding and found there was a reasonable indication of injury due to imports of the subject merchandise.  This court affirmed the ITC's remand determination.  See Celanese Chemicals, Ltd. v. United States, 32 CIT __, Slip Op. 08-125 (Nov. 19, 2008).  An importer of the subject merchandise appealed the decision before the Court of Appeals for the Federal Circuit, and the Court of Appeals affirmed the ITC's remand determination.  See Notice of Entry of Judgment Without Opinion, Dec. 23, 2009, ECF No. 107 (Celanese Chemicals, Ltd. v. United States, Ct. No. 04-00594); [PVA] From Taiwan; Determination, 75. Fed. Reg. 15,726 (Dep't Commerce Mar. 25, 2010).

On February 1, 2011, Commerce issued its final determination in the investigation, calculating an antidumping margin of 3.08% for Chang Chun.  See [PVA] from Taiwan, 76 Fed. Reg. 5,562 (Dep't Commerce Feb. 1, 2011) (final determination of sales at less than fair value) ("Inv. Final Determination").  Pursuant to the Inv. Final Determination, Commerce instructed CBP to suspend liquidation of entries of subject PVA beginning February 1, 2011, and to require cash deposits or bonds at 3.08% ad valorem on shipments produced and exported by Chang Chun.  See CBP Administrative Message No. 1033307 [attached as Ex. 4 to Compl.] at 2, 4, Feb. 2, 2011, ECF No. 4.  Commerce published the antidumping duty ("ADD") order on PVA from Taiwan on March 15, 2011, see [ADD] Order: [PVA] From Taiwan, 76 Fed. Reg. 13, 982 (Dep't Commerce Mar. 15, 2011) ("ADD Order"), and instructed CBP to continue suspension of liquidation for subject entries made on or after March 14, 2011 and to collect cash deposits equal to the rate in effect at the time of entry.  CBP Administrative Message No. 1075302 [attached as Ex. 5 to Compl.] at 2, Mar. 16, 2011, ECF No. 4.  For Chang Chun, that rate was 3.08%.  Compl. at ¶ 15.  Plaintiff, Perry, is a U.S. importer of the subject PVA from Taiwan produced and exported by Chang Chun during the relevant periods: March 1, 2012 through February 28, 2013 ("AR2 period"), and March 1, 2013 through December 29, 2013 ("Open Period"). Compl. at ¶ 9.

On April 14, 2011, Chang Chun initiated an action before this court challenging certain aspects of Commerce's Inv. Final Determination.  Summons, Apr. 14, 2011, ECF No. 1 (Chang Chun Petrochemical Co. Ltd. v. United States, Consol. Ct. No. 11-00095);

Compl., May 16, 2011, ECF No. 8 (Chang Chun Petrochemical Co. Ltd. v. United States, Consol. Ct. No. 11-00095).

On April 30, 2012, Commerce announced the initiation of the first administrative review ("AR1") of the ADD order on PVA from Taiwan.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 77 Fed. Reg. 25,401 (Dep't Commerce Apr. 30, 2012).   The period of review for AR1 was September 13, 2010 through February 29, 2012.  [PVA] From Taiwan, 78 Fed. Reg. 20,890, 20,890 (Dep't Commerce Apr. 8, 2013) (preliminary results of [ADD] administrative review; 2010–2012).  As in the investigation, Chang Chun participated as the only respondent.   On June 15, 2012, Commerce instructed CBP to continue suspending liquidation of Chang Chun's subject entries of PVA from Taiwan and to continue collecting cash deposits at the current rate.  See CBP Administrative Message No. 2166302 [attached as Ex. 6 to Compl.] at 2–3, June 14, 2012, ECF No. 4.  Perry thus continued to make cash deposits of 3.08% on its entries of subject merchandise.  Compl. at ¶ 18.

On April 8, 2013, Commerce published the preliminary results of AR1, in which it calculated an antidumping margin for Chang Chun of 0.00%.  See [PVA] From Taiwan, 78 Fed. Reg. 20,890 (Dep't Commerce Apr. 8, 2013) (preliminary results of [ADD] administrative review; 2010–2012).  Commerce explained that the cash deposit rate for Chang Chun would "be the rate established in the final results of [AR1]," and that "[t]hese cash deposit requirements, when imposed, shall remain in effect until further notice."  Id.

at 20,891.  Perry thus continued to make cash deposits on its imports of subject PVA from

Taiwan at 3.08%, ahead of the final results of AR1.  Compl. at ¶ 19.

On April 10, 2013, the court remanded for further consideration Commerce's Inv.

Final Determination.  Chang Chun Petrochemical Co. Ltd. v. United States, 37 CIT __,

__, 906 F. Supp. 2d 1369, 1382 (2013) ("Chang Chun I").  On May 1, 2013, Commerce

announced the initiation of the second administrative review ("AR2") of the ADD order

covering PVA from Taiwan.  See Initiation of Antidumping and Countervailing Duty

Administrative Reviews and Request for Revocation in Part, 78 Fed. Reg. 25,418 (Dep't

Commerce May 1, 2013).  The period of review for AR2 was March 1, 2012 through

February 28, 2013.  Id. at 25,420.  Chang Chun was again the only respondent.  Id.  As

a result of the initiation of AR2, Commerce instructed CBP to continue suspending

liquidation of Chang Chun's subject entries of PVA and to continue collecting cash

deposits at the rate in effect at the time.  See CBP Administrative Message No. 3140309

[attached as Ex. 7 to Compl.] at 2–3, May 20, 2013, ECF No. 4.  Perry thus continued to

make cash deposits on its entries of subject PVA at a rate of 3.08%.  Compl. at ¶ 22.

On June 24, 2013, Commerce published the final results of AR1, affirming its

preliminary determination of a 0.00% antidumping margin for Chang Chun.  [PVA] from

Taiwan, 78 Fed. Reg. 37,794 (Dep't Commerce June 24, 2013) (final results of [ADD]

administrative review; 2010–2012).  Pursuant to the results of AR1, Commerce instructed

CBP to revise the cash deposit rate for Chang Chun's entries of subject PVA to 0.00%,

effective June 24, 2013.  See CBP Administrative Message No. 3177303 [attached as

Ex. 8 to Compl.] at 2, June 26, 2013, ECF No. 4.  The majority of Perry's entries made

during the period of review for AR1 were liquidated without regard to antidumping duties, i.e., at a 0.00% rate.[2]  Compl. at ¶ 24.

On May 24, 2013, Chang Chun withdrew its request for an administrative review of the ADD order covering PVA from Taiwan,[3] and on July 1, 2013, Commerce rescinded AR2.[4]  See [PVA] From Taiwan, 78 Fed. Reg. 39,256 (Dep't Commerce July 1, 2013) (rescission of [ADD] administrative review; 2012–2013).  Commerce instructed CPB to liquidate all entries of Chang Chun's subject PVA made during the AR2 period at the cash deposit rate required at the time of entry.[5]  See CBP Administrative Message No. 3199303 [attached as Ex. 2 to Compl.] at 2, July 18, 2013, ECF No. 4.

On July 12, 2013, Commerce issued its remand redetermination in the litigation challenging Commerce's Inv. Final Determination, calculating a weighted average dumping margin of 0.00% for Chang Chun.  Results of Redetermination Pursuant to Court Remand, July 12, 2013, ECF No. 47-1 (Chang Chun Petrochemical Co. Ltd. v. United States, Consol. Ct. No. 11-00095).  This court sustained Commerce's remand redetermination in an opinion issued on December 18, 2013.  Chang Chun Petrochemical

---

[2] CBP liquidated a small number of Perry's POR 1 entries at rates other than zero, which Perry protested before CBP.  Compl. at ¶ 24, n.1.

[3] Chang Chun requested the review on May 1, 2013, and Commerce initiated AR2 pursuant to section 751(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a), and 19 C.F.R. § 351.221(c)(1)(i).

[4] Pursuant to 19 C.F.R. § 351.213(d)(1), Commerce will rescind an administrative review "in whole or in part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review."

[5] It is undisputed that the majority of Perry's AR2 entries were in fact liquidated prior to January 28, 2014, the date on which Commerce published the Timken notice revoking the ADD order. Perry's Resp. Ct.'s Mar. 12, 2019 Letter, Mar. 20, 2019, ECF No. 48; Def.'s Resp. to Ct.'s Mar. 12, 2019 Letter, Mar. 20, 2019, ECF No. 49.

Co. Ltd. v. United States, 37 CIT __, __, 953 F. Supp. 2d 1300, 1307 (2013) ("Chang

Chun II"). On January 28, 2014, Commerce published a Timken notice[6] amending its Inv.

Final Determination and revoking the ADD Order covering PVA from Taiwan in full. See

[PVA] From Taiwan, 79 Fed. Reg. 4,442 (Dep't Commerce Jan. 28, 2014) (notice of court

decision not in harmony with final determination of sales at less than fair value and

revocation of [ADD] order) ("Timken/Revocation Notice"). The court's decision in Chang

Chun II became final on February 18, 2014 when the period for appeal to the Court of

Appeals for the Federal Circuit expired. See 28 U.S.C. §§ 2107 & 2645(c); Fed. R. App.

P. 4(a)(1)(B).

    On March 14, 2014, Commerce issued additional instructions directing CBP to

liquidate Chang Chun's subject entries of PVA made during the Open Period (March 1,

2013 to December 29, 2013) at the cash deposit rate in place at the time of entry.[7] CBP

Administrative Message No. 4073303 [attached as Ex. 1 to Compl.] at 2–3, Mar. 14, 2014,

ECF No. 4 ("Post-Timken Instructions"); see also [PVA] From Taiwan, 79 Fed. Reg.

4,442, 4,442 n.2 (Dep't Commerce Jan. 28, 2014) (notice of court decision not in harmony

with final determination of sales at less than fair value and revocation of [ADD] order)

(explaining the effective date of Chang Chun II). Commerce's instructions specified that

---

[6] The Timken notice stems from Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990), as clarified by Diamond Sawblades Mfrs. Coalition v. United States, 626 F.3d 1374 (Fed. Cir. 2010), where the Court of Appeals for the Federal Circuit interpreted the requirements of 19 U.S.C. § 1516a(c)(1). Commerce must notify the public when a court's final judgment in a case is "not in harmony" with an original agency determination, and Commerce will suspend liquidation to ensure that post-notice entries are liquidated at a rate consistent with a conclusive court decision. Timken Co., 893 F.2d at 341.

[7] Liquidation for these entries was suspended pending a request for an administrative review. See 19 C.F.R. § 351.213.

only the entries made on or after December 30, 2013 would be liquidated without regard to antidumping duties, i.e., CBP would issue a full refund of all cash deposits made for those entries, but not for the entries made previously.  Post-Timken Instructions at 2–3.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(i)(4), which authorizes the court to review the administration and enforcement of, inter alia, ADD determinations under section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a.[8]  The court will dismiss a complaint for failure to state a claim if it fails to allege facts "plausibly suggesting (not merely consistent with)" a showing that entitles the party to relief.  Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  In deciding a 12(b)(6) motion to dismiss, the court "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."  Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

---

[8] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## DISCUSSION

Perry now seeks a writ of mandamus directing Commerce to issue instructions to CBP to reliquidate Chang Chun's entries during the AR2 period and the Open Period without regard to antidumping duties.  Compl. at 10.  Perry argues that Commerce failed to instruct CBP to liquidate Chang Chun's entries of PVA from Taiwan in accordance with the court's decisions in <u>Chang Chun I</u> and <u>Chang Chun II</u>, and Commerce's amended final determination and revocation of the original ADD order.  Compl. at ¶ 33.  Specifically, Perry contends that Chang Chun's entries of PVA made during the AR2 period, as well as Chang Chun's entries of PVA made during the Open Period, which were liquidated at the rate in place at the time of entry, should be liquidated without regard to antidumping duties.[9]  <u>Id.</u>  Defendant moves to partially dismiss Perry's claim to the extent that it seeks relief for injuries allegedly sustained by other parties, and with respect to the AR2 entries. The court addresses the arguments in turn.

### A. Entries for Which Perry Did Not Pay Cash Deposits

Defendant moves to dismiss for lack of subject matter jurisdiction Perry's complaint to the extent that it seeks relief based on injuries allegedly sustained by parties other than Perry.   Def.'s Partial Mot. Dismiss at 8, 14–15.   Defendant emphasizes that Perry's complaint seeks reliquidation of all entries of subject PVA from Taiwan produced and exported by Chang Chung during the relevant periods, without regard for who imported the entries or paid cash deposits on them.  <u>Id.</u> at 14 (citing Compl. at 10).   Defendant

---

[9] Perry's complaint avers that "all of Perry's cash deposits on its entries of subject PVA for this additional period [AR2] were unlawfully liquidated at the cash deposit rate."   Compl. at ¶ 7.

contends that Perry lacks standing with respect to those entries for which it was not the importer.  Id.  Perry argues that Defendant's argument fails to understand the operation of ADD orders, Perry's actual request for relief, and the court's broad remedial powers pursuant to 28 U.S.C. § 1581(i).  Pl.'s Resp. Br. at 12.  For the reasons that follow, Perry lacks standing with respect to the above-mentioned entries and Defendant's motion is therefore granted.

Standing is a threshold matter in which the court ensures that the plaintiff meets the requirements of Article III of the Constitution.  McKinney v. U.S. Dept. of Treasury, 799 F.2d 1544, 1549 (Fed. Cir. 1986); see also Warth v. Seldin, 422 U.S. 490, 517–518 (1975) ("[t]he rules of standing, . . . are threshold determinants of the propriety of judicial intervention.").  The Constitution constrains the federal courts' jurisdiction to cases which involve "actual cases or controversies," and standing constitutes part of this limitation.  Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."); see U.S. Const. art. III, § 2, cl. 1.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must satisfy three elements.  First, it must have suffered an "injury in fact," that is, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Id. at 560.  Second, a causal connection must

exist between the injury and the conduct complained of.  Id.  Third, the plaintiff must show a likelihood that the injury can be redressed by a favorable court decision.  Id. at 561.

Here, with respect to entries for which Perry was not the importer and did not pay the cash deposits, Perry suffered no "injury in fact," as Perry paid nothing on these entries and was not impacted by their liquidation.  Lujan, 504 U.S. at 560.  Perry may thus assert its claim only with respect to entries for which it was the importer and paid the cash deposit rate.  With respect to entries for which that is not the case, during both the AR2 period and the Open Period, Perry lacks standing.

Perry contends that Commerce's revocation of the ADD order was not limited to specific importers and should apply to all shipments of subject PVA from Taiwan during the relevant periods.  Pl.'s Resp. Br. at 12–13.  Although Commerce may not have limited its directive to specific importers, Perry may not maintain a claim for which it suffered no particularized injury nor faced imminent threat of such injury.  Compare Warth, 422 U.S. at 499 (1975) ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"), with Shenyang Yuanda Aluminum Indus. Engineering Co., Ltd. v. United States, Appeal No. 18-1553 (Fed. Cir. Mar. 18, 2019) (holding that interested parties that participated by invitation in a scope inquiry at the administrative level but at whose merchandise the scope proceeding was not directed had constitutional standing to challenge Commerce's scope determination).

Perry further maintains that under the statutory framework, there is no legal basis for Commerce to apply a revoked ADD order to a single importer because ADD orders cover specific countries, not specific importers, and thus there would exist no occasion in which a single importer would bring an action under section 1581(i).  Pl.'s Resp. Br. at 13.  This line of argument sidesteps the fact that Perry is attempting to bring an action based on entries for which it suffered no "injury in fact."  Lujan, 504 U.S. at 560.  That the statute does not expressly contemplate applying a revoked ADD order to a single importer does not mean that Perry must seek reliquidation of all subject entries—even those for which it suffered no injury—to state a claim.  Such an approach would implicitly negate the standing requirement imposed by Article III of the Constitution.

Finally, Perry asserts that it does not seek refunds of cash deposits potentially made by other importers during AR2.  Pl.'s Resp. Br. at 14–16.  Perry argues that although its desired remedy—reliquidation of all subject entries during the relevant periods, not just Perry's—may affect other parties, this fact does not affect the validity of Perry's cause of action and requested relief.  Id. at 17.  Paragraph one of Perry's complaint states that Perry seeks

> a writ of mandamus from the Court compelling [Commerce] to issue corrected liquidation instructions to [CBP] directing that entries of [PVA] from Taiwan produced and exported by [Chang Chun] during the periods March 1, 2012 to February 28, 2013 and March 1, 2013 to December 29, 2013 be reliquidated without regard to antidumping duties, in accordance with Commerce's amended final determination and revocation of the [ADD] order covering PVA from Taiwan, and all cash deposits made by Perry be returned, with interest, as provided by law.

Compl. at ¶ 1 (internal citation omitted).  Although the above paragraph limits Perry's request for refunds to entries for which it paid cash deposits, it nonetheless requests

reliquidation of all of Chang Chun's entries—regardless of importer—during the relevant

periods.  Moreover, the complaint's request for relief seeks

> a writ of mandamus directing Commerce to issue instructions to [CBP]
> within to [sic] (10) days to reliquidate without regard to antidumping duties
> all entries of subject PVA produced and exported by Chang Chun during
> the periods of March 1, 2012 to February 28, 2013 and March 1, 2013 to
> December 29, 2013, and to refund excess antidumping duty deposits, with
> interest, as provided by law.

Compl. at 10 (Request for Relief).  The request for relief again makes clear that Perry

seeks reliquidation of all entries, irrespective of whether Perry paid cash deposits on

those entries.  Perry alleges no particularized injury relating to entries for which it paid no

cash deposits.  Accordingly, to the extent that there are entries from Chang Chun during

the relevant periods for which Perry did not pay the cash deposits, Perry lacks standing

with respect to such entries and this Court accordingly lacks subject matter jurisdiction.

### B.  Chang Chun's AR2 Entries

Perry argues that the court's decisions and Commerce's amended final

determination and revocation of the order on January 28, 2014 render the original

antidumping order "unlawful," and that Commerce's Post-Timken Instructions were

inconsistent with such results.  Compl. at ¶ 33.  Perry challenges Commerce's Post-

Timken Instructions, arguing they failed to give effect to Chang Chun II with respect to the

AR2 entries and the Open Period entries.  Pl.'s Resp. Br. at 4.  Under Perry's view of the

relevant law, pursuant to the Administrative Procedure Act ("APA") and the Court's

residual jurisdiction provision, 28 U.S.C. § 1581(i)(4), Commerce must reliquidate the

AR2 entries (liquidated pursuant to instructions dated July 18, 2013) and the Open Period

entries (liquidated pursuant to instructions issued March 14, 2014) without regard to

antidumping duties.  Pl.'s Resp. Br. at 4.  Perry describes the cash deposits made for these entries as "unlawfully withheld," arguing that the reliquidation is "provided by law." Id.

Defendant moves to dismiss Perry's claim with respect to entries made during the AR2 period, arguing that Perry has failed to state a claim for which relief may be granted. Def.'s Partial Mot. Dismiss at 7–8, 9–14; USCIT R. 12(b)(6).[10]  Defendant contends that Commerce lawfully instructed CBP to liquidate these entries in accordance with the relevant antidumping statutes and regulations governing liquidation.[11]  Id. at 8, 10–13. Further, Defendant argues that Perry failed to protect its rights with respect to the AR2 entries.  Id. at 13–14; Def.'s Suppl. Br. at 3–16.  Specifically, Defendant contends that Perry could have either (1) participated in the ADD investigation, thus positioning it to challenge the Inv. Final Determination in this court and file for an injunction enjoining liquidation, or (2) requested and participated in AR2, thus triggering suspension of liquidation of subject entries.  Def.'s Suppl. Br. at 3–11; 19 U.S.C. § 1516a(a)(2)(A); 19 U.S.C. § 2631(c); see also 19 U.S.C. § 1675(a)(2)(C).

Perry fails to state a claim for which relief should be granted with respect to the AR2 entries liquidated prior to Commerce's revocation of its order on January 28, 2014 because Commerce lawfully instructed CBP to liquidate Chang Chun's AR2 entries, and

---

[10] Defendant cites Rule 12(b)(5) on page 8 of its brief but presents its argument as Perry failing to state a claim upon which relief may be granted.  USCIT Rule 12(b)(5) previously prescribed the failure to state a claim defense, but the rules were modified on July 1, 2015 to correspond with the Federal Rules of Civil Procedure.  See USCIT Rule 12 (Practice Comment).  Failure to state a claim now falls under USCIT Rule 12(b)(6).

[11] Defendant's motion to dismiss applies only to the AR2 entries; it does not cover Perry's claim with respect to the Open Period entries.  See Def.'s Partial Mot. Dismiss at 7–8.

Perry took no steps to delay liquidation.[12]    Liquidation is the "final computation or ascertainment of duties on entries."  19 C.F.R. § 159.1 (2012).  As a general rule, "entries of merchandise . . . covered by a determination of the Secretary . . . shall be liquidated in accordance with the determination of the Secretary."  19 U.S.C. § 1516a(c)(1).  Where entries have been lawfully liquidated, a subsequent court decision affecting the ADD for the relevant period is powerless to alter the duties already assessed.  See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (holding that liquidation of entries made during an administrative review period would constitute irreparable harm for a domestic manufacturer because, without it, the court would be unable to ensure that duties were correctly assessed for the relevant period, the only effective remedy available); cf. Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1309 (Fed. Cir. 2004) (allowing a party to seek reliquidation of entries on the grounds that Commerce's liquidation instructions were unlawful).    A party may delay liquidation of

---

[12] In a letter to the court, Defendant confirmed that a small number of Perry's AR2 entries were liquidated after January 28, 2014, the date on which Commerce published the Timken/Revocation Notice.  Def.'s Resp. to Ct.'s Mar. 12, 2019 Letter, Mar. 20, 2019, ECF No. 49.  The court dismisses Perry's complaint as to the AR2 entries solely with respect to Perry's AR2 entries which were in fact liquidated on or before January 28, 2014.  See 19 U.S.C. § 1516a(c)(1).  The majority of Perry's AR2 entries fall into this category.  See id.  The court declines to dismiss Perry's complaint with respect to Perry's AR2 entries not liquidated on or before January 28, 2014, the date on which Commerce issued the Timken/Revocation Notice.  Under § 1516a(c)(1), entries not liquidated at the time Commerce revoked the ADD order would no longer constitute merchandise "covered by a determination of the Secretary."  It would therefore be unlawful for Commerce to liquidate such entries at the rate in place at the time of entry, given that the rate would have been discredited.  See 19 U.S.C. § 1516a(c)(1); see also Timken Co. v. United States, 893 F.2d 337, 341–42 (Fed. Cir. 1990) (explaining that 19 U.S.C. § 1516a(c)(1) carries a presumption of correctness with respect to Commerce's determinations, but that presumption "disappears" when the Court of International Trade or the Court of Appeals for the Federal Circuit issues a decision contrary to that determination, and that liquidation should be in accordance with the conclusive decision).

entries, however, and potentially avoid having entries liquidated at the cash deposit rate calculated in the final determination by taking one of several steps.  These steps are provided by statute and regulation and are available at different points in time.

First, a party may delay liquidation at the estimated rate by participating in the antidumping investigation, challenging the final determination before this court, and filing for an injunction enjoining liquidation.  19 U.S.C. § 1516a(c); see also Zenith, 710 F.2d at 810.  Entries subject to the injunction are then liquidated "in accordance with the final court decision."  19 U.S.C. § 1516a(e).  Absent an injunction, Commerce instructs CBP to liquidate the entries at the cash deposit rate in place at the time of entry.  19 U.S.C. § 1516a(c); see also Mukand Int'l, Ltd. v. United States, 29 CIT 1526, 1532, 412 F. Supp. 2d 1312, 1317 (2005) (holding that an importer's failure to seek injunction prior to liquidation of its entries prevented the court from exercising subject matter jurisdiction over its claim that it was entitled to a refund of cash deposits).

Second, and subsequent to the investigation, a party may delay liquidation of subject entries by requesting an administrative review of an ADD order, in which case the result of that administrative review serves as "the basis for the assessment of . . . antidumping duties . . . and for deposits of estimated duties."  19 U.S.C. § 1675(a)(2)(C). If no review is requested, however, Commerce instructs CBP, "without additional notice," to liquidate entries of the subject merchandise "at rates equal to the cash deposit of, or bond for, estimated antidumping duties . . . required on that merchandise at the time of entry."  19 C.F.R. § 351.212(c)(1).  This is the "automatic assessment" mechanism.  19 C.F.R. § 351.212(c).

Here, Commerce lawfully instructed CBP on July 18, 2013 to liquidate Chang Chun's AR2 entries once Chang Chun withdrew its request for an administrative review on May 24, 2013 and Commerce rescinded AR2 on July 1, 2013.  There was no injunction in place from litigation related to the investigation, and there was no administrative review suspending liquidation.  Pursuant to 19 U.S.C. § 1516a(c)(1), where liquidation is not enjoined by the court, entries are liquidated "in accordance with the determination of the Secretary" if entered "on or before the date of" the Timken notice.  Chang Chun's AR2 entries that were liquidated pursuant to Commerce's July 18, 2013 instructions on or prior to the day Commerce issued the Timken/Revocation Notice—January 28, 2014—fall squarely within this description.

Although Perry could have prevented its entries from being liquidated at the cash deposit rate, it slept on its rights.  Perry could have participated as a party to the proceeding in the ADD investigation.  See 19 U.S.C. § 1516a(a)(2)(A); see also 19 U.S.C. § 1677(9)(A) (defining "interested party" as, inter alia, a U.S. importer of subject merchandise).  Had it done so, Perry could have brought an action in this court challenging the Inv. Final Determination and sought an injunction enjoining liquidation. 19 U.S.C. § 1516a(a)(2)(A)(i)(II); 19 U.S.C. § 1516a(c)(2).  Perry took no such steps.

Perry could have also requested and participated in AR2.  See 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.213(b).  When an interested party requests an administrative review, liquidation of the entries subject to the review is suspended until Commerce publishes the final results of the review.  See 19 U.S.C. § 1675(a)(2)(C).  A party must, however, request an administrative review in order to avoid having entries

liquidated automatically at the estimated rate.  See Mitsubishi Electronics America, Inc.

v. United States, 44 F.3d 973, 976–77 (Fed. Cir. 1994) (explaining that where no party

makes a request for an administrative review, Commerce instructs CBP automatically to

assess duties at the estimated rate).  Here, Perry never requested an administrative

review, and Commerce rescinded AR2 after Chang Chun withdrew its request on July 1,

2013.  See 19 C.F.R. § 351.213(d)(1) (providing that the Secretary will rescind an

administrative review where a requesting party timely withdraws its request); see also

United States v. Great Am. Ins. Co., 35 CIT __, __, 791 F. Supp. 2d 1337, 1363 (2011)

(holding that Commerce's rescission of an administrative review of an antidumping order

removed suspension of liquidation of subject entries).  Thus, although Perry had the

opportunity to seek suspension of liquidation, it failed to do so, and CBP lawfully liquidated

the subject goods pursuant to the automatic assessment provision prior to the revocation

of the order.  See 19 C.F.R. § 351.212(c).

   Perry contends that its ability to have prevented liquidation was not guaranteed

and therefore was merely an option independent of its right to bring this action.  Pl.'s

Suppl. Resp. Br. at 4.  The argument is unavailing, as Perry's ability to participate in AR2

and enjoin the liquidation of the entries here was clear.[13]  The Court of Appeals for the

---

[13] Notwithstanding Perry's argument that there was "nothing in the Statute or Commerce's regulations that guarantee that the efforts Perry could have undertaken to protect its rights in theory would have succeeded," Pl.'s Suppl. Resp. Br. at 4, this court routinely grants motions to enjoin liquidation because of the unique nature of antidumping and countervailing duty challenges. "The purpose of a preliminary injunction is to keep the status quo while an action is pending, and this Court and the Federal Circuit have observed that, '[i]n antidumping and countervailing duty cases preliminary injunctions against liquidation have become almost

(footnote continued)

Federal Circuit made clear in Capella Sales & Services Ltd. v. United States, Aluminum

Extrusions Fair Trade Committee that a party can and should preserve the status quo

through challenging the administrative determination in court and obtaining an injunction.

878 F.3d 1329 (Fed. Cir. 2018).  There, Capella, an importer of aluminum extrusions from

the People's Republic of China, refused to pay cash deposits at the all-others rate

determined by Commerce in its final determination of a countervailing duty investigation,

and instead challenged Commerce's instructions regarding the applicable rate before this

court.  Id. at 1332.  Commerce, in its CVD investigation, issued a final determination

---

automatic due to the retrospective nature of U.S. trade remedies, the length of the judicial review process, and the cruciality of unliquidated entries for judicial review.'" Zhejiang Native Produce & Animal By-Prod. Imp. & Exp. Corp. v. United States, 39 CIT __, __, 61 F. Supp. 3d 1358, 1363 (Ct. Int'l Trade 2015) (citing Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95–96 (Fed. Cir. 2014)).  The Court of Appeals for the Federal Circuit has found that liquidation may constitute irreparable harm because it would foreclose the sole remedy available to a plaintiff looking to attain assessment of duties in accordance with the result ultimately upheld.  See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983).  The Court of Appeals ruled in Capella Sales & Services Ltd. v. United States, Aluminum Extrusions Fair Trade Committee, a case involving an administrative review, that because an importer failed to request an administrative review of its entries and did not obtain a court injunction, Commerce lawfully ordered its entries liquidated at the cash deposit rate.  878 F.3d 1329 (Fed. Cir. 2018).  Implicit in the Court's holding is that parties who seek liquidation in accordance with a final court order should participate in the administrative review, and if necessary, seek an injunction at the Court of International Trade.

The court has also granted preliminary injunctions in a variety of cases challenging the final results of antidumping investigations.  See, e.g., OKI Elec. Industry Co., Ltd. v. United States, 11 CIT 624, 632–33, 669 F. Supp. 480, 486–87 (1987); Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States, 39 CIT __, Slip Op. 15-39 (Apr. 27, 2015).  Although the court has denied contested motions for preliminary injunctions in investigation litigations, see, e.g., Dupont Teijin Films USA, LP v. United States, 27 CIT 1754, 1756–57 (2003) (denying the plaintiff's motion for a preliminary injunction enjoining liquidation during the pendency of its court challenge to Commerce's antidumping determination), recent cases have granted such motions.  See Husteel Co., Ltd. v. United States, 38 CIT __, 34 F. Supp. 3d 1355, 1363 (2014) (granting the plaintiffs' motion for preliminary injunction enjoining liquidation pending the resolution of litigation where the plaintiffs were Korean producers and exporters challenging the final results of an antidumping investigation).

establishing a 374.15% all-others rate.  Id.  Several other importers challenged

Commerce's final determination before this court, which led to court decisions overturning

the 374.15% rate, MacLean-Fogg Co. v. United States, 36 CIT __, 853, __, F. Supp. 2d

1336, 1342–43 (2012), and affirming a revised, lower rate determined by Commerce.

MacLean-Fogg Co. v. United States, 36 CIT __, __, 885 F. Supp. 2d 1337, 1342–43

(2012).  Although certain parties requested an administrative review of their entries

subject to Commerce's final determination, Capella did not request such a review, and its

entries were automatically liquidated at the 374.15% cash deposit rate in effect at the time

of entry.  Capella, 878 F.3d at 1332.  Capella argued that Commerce's application of the

374.15% rate was unlawful, but the Court of Appeals held that Commerce lawfully

liquidated Capella's entries pursuant to 19 U.S.C. § 1516a(c)(1), as liquidation was not

enjoined by the court and the entries occurred prior to the issuance of Commerce's

Timken notice.  Id. at 1333–34.

The principle applies equally here: liquidation of Chang Chun's entries was not

enjoined by the court, Perry did not request an administrative review, and Commerce had

not yet issued the Timken/Revocation Notice.  Accordingly, entries were properly

"liquidated as entered" pursuant to the Secretary's final determination.  Capella, 878 F.3d

at 1334 (quoting Shinyei, 355 F.3d at 1307–08 (Fed. Cir. 2004).

Perry argues it has a cause of action under the APA because as a matter of law

Commerce was required to order reliquidation despite the operation of the automatic

assessment provision.  Pl.'s Resp. Br. at 5–10.  Section 702 of the APA provides that "[a]

person suffering legal wrong because of agency action, or adversely affected or

aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

review thereof."  5 U.S.C. § 702.  Perry contends that its claim challenges Commerce's

Post-Timken Instructions as running contrary to the court's decision in Chang Chun II,

and Commerce's amended final determination and revocation of the ADD order.[14]  Pl.'s

Resp. Br. at 6–10.

Perry relies on Shinyei, 355 F.3d 1297, arguing that Shinyei demonstrates that

Perry should not be precluded from relief under the APA simply because its entries have

already been liquidated.[15]  Pl.'s Resp. Br. at 8.  Although Shinyei demonstrates that a

cause of action under the APA utilizing this court's residual jurisdiction provisions exists

for some injuries, Perry has not shown that it has such a cause of action with respect to

its AR2 entries liquidated prior to January 28, 2014.  In Shinyei, the Court of Appeals for

---

[14] The Court of Appeals for the Federal Circuit has recognized that a challenge to "Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results."  Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003).

[15] Perry also cites Jilin Henghe Pharmaceutical Co. v. United States, 28 CIT 969, 342 F. Supp. 2d 1301 (2004) as support for its argument that relief is appropriate under the APA and 28 U.S.C. § 1581(i).  The court's decision in Jilin was vacated by the Court of Appeals for the Federal Circuit and thus offers minimal guidance.  See Jilin Henghe Pharmaceutical Co. v. United States, 123 Fed. Appx. 402 (Fed. Cir. 2005).  Nevertheless, to the extent that Jilin is relevant, the case at hand is easily distinguished by the fact that CBP liquidated the AR2 entries pursuant to lawful instructions prior to Commerce's issuance of the Timken/Revocation Notice amending the Inv. Final Determination and revoking the ADD order.  In Jilin, on the other hand, Commerce sought to impose antidumping duties on the Plaintiffs' entries made prior to the final court decision modifying the antidumping margin, but which remained unliquidated at the time Commerce issued its Timken notice.  Jilin, 28 CIT at __, 342 F. Supp. 2d at 1303.  The court explained that liquidating entries in such a manner ran contrary to the court's final determination, and that 19 U.S.C. § 1516a(c)(1) and 19 U.S.C. § 1516a(e) should not be read to enable liquidation based on "Commerce's now discredited determination."  Id. at 1309.  Thus, the court explained, once an antidumping determination is declared invalid, Commerce may not use it as a basis for imposing antidumping duties on previously subject entries.  Id. at 1310.  The scenario presented in Jilin differs from this one in the sense that Commerce attempted to liquidate based on a rate that had already been declared invalid.

the Federal Circuit held that liquidation of subject goods did not moot an importer's ability to challenge Commerce's liquidation instructions to CBP.  Shinyei, 355 F.3d at 1299, 1312.  The plaintiff was an importer of merchandise subject to an ADD order, id. at 1299–1300, and it alleged that Commerce issued unlawful instructions to CBP that failed to liquidate the plaintiff's goods at the rate set forth in Commerce's amended final results.[16] Id. at 1306.  The plaintiff brought an action seeking a writ of mandamus directing CBP to liquidate its entries at the amended rate, or to declare Commerce's instructions as violating 19 U.S.C. § 1675(a)(2) and remand to Commerce to issue appropriate instructions for liquidating its entries at the modified rate.  Id. at 1303.  While the plaintiff's action was pending, Commerce instructed CBP to liquidate "as entered" all entries during the relevant review that were not liquidated previously, including the plaintiff's imports. Id.  The plaintiff amended its complaint, alleging that the instructions were unlawful and seeking reliquidation of its entries at the amended rate.  Id. at 1303–04.

The Court held that liquidation did not preclude the Court of International Trade from exercising jurisdiction pursuant to section 1581(i)(4), id. at 1305, and explained that the plaintiff's challenge to Commerce's liquidation instructions was not barred by 19

---

[16] Specifically, the plaintiff alleged that Commerce's liquidation instructions, given during the pendency of its lawsuit, contravened 19 U.S.C. § 1675(a)(2)(C), which requires that the results of an administrative review determination be "the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."

U.S.C. § 1516a because it "is not an action defined under section [1516a]," and thus the injunction and liquidation rules enumerated by section 1516a do not apply.  Id. at 1309.[17]

Shinyei differs from this case in a critical way—in Shinyei, Commerce issued erroneous liquidation instructions after it published amended final results reflecting the courts' opinions and corresponding orders.  See Shinyei, 355 F.3d at 1302–03.  Here, by contrast, Commerce issued liquidation instructions for AR2 pursuant to the automatic assessment provision on July 18, 2013, before Commerce issued the Timken/Revocation Notice revoking the order in full on January 28, 2014.  See CBP Administrative Message No. 3199303 [attached as Ex. 2 to Compl.] at 2, July 18, 2013, ECF No. 4; see also [PVA] From Taiwan, 79 Fed. Reg. 4,442 (Dep't Commerce Jan. 28, 2014) (notice of court decision not in harmony with final determination of sales at less than fair value and revocation of [ADD] order).  Commerce thus lawfully instructed CBP to liquidate the AR2 entries at the rate in place at the time of entry—here, the rate established in the Final Determination—in accordance with the statute.  See 19 U.S.C. § 1516a(c).  For those entries that were in fact liquidated prior to the revocation of the Order, Perry has failed to state a claim.

Perry also maintains that, regardless of when the entries were liquidated, Commerce "had a duty to issue liquidation instructions in concert with" Chang Chun II. Pl.'s Resp. Br. at 11.  Perry's argument is unpersuasive, as it fails to consider the

---

[17] The court distinguished Shinyei from situations in which Section 516A applies, noting that "Section 516A is limited on its face to the judicial review of 'determinations' in countervailing duty and antidumping duty proceedings . . . The case at bar is an action under the APA challenging Commerce instructions as in violation of section 1675(a)(2)(C); section 516A simply does not apply." Shinyei, 355 F.3d at 1309.

operation of the automatic assessment provision.  <u>See</u> 19 C.F.R. § 351.212(c).  Perry's argument is further undermined by 19 U.S.C. § 1675(d)(3), which provides that a determination to revoke an ADD order "shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by the administering authority."  The statute thus limits the application of a revocation decision to unliquidated entries, allowing for the normal operation of the liquidation provisions leading up to such a determination.  Perry attempts to extend <u>Shinyei</u> to encompass Chang Chun's liquidated AR2 entries, but as described above, such a reading is unavailing because the liquidation instructions in <u>Shinyei</u> ran in contravention to the amended final results that Commerce had already published at the time it issued the liquidation instructions.  <u>Shinyei</u>, 355 F.3d at 1302–03. Perry's argument that Commerce's Post-Timken Instructions necessitated the re-liquidation of Chang Chun's AR2 entries therefore fails to carry the day.

## CONCLUSION

Defendant's partial motion to dismiss with respect to entries for which Perry suffered no injury and with respect to Chang Chun's AR2 entries is granted in part and denied in part.  Therefore, it is in accordance with the foregoing, and upon due deliberation, it is

**ORDERED** that Defendant's motion is granted in part; and it is further

**ORDERED** that Plaintiff's complaint is dismissed with respect to entries of PVA from Taiwan entered or withdrawn from warehouse during the period of March 1, 2012,

Court No. 15-00168                                                          Page 26

to February 28, 2013 that were liquidated on or before January 28, 2014, the date on which Commerce issued the Timken/Revocation Notice; and it is further

**ORDERED** that Defendant's motion is denied with respect to entries of PVA from Taiwan entered or withdrawn from warehouse during the period of March 1, 2012, to February 28, 2013 that were not liquidated on or before January 28, 2014, the date on which Commerce issued the Timken/Revocation Notice; and it is further

**ORDERED** that Plaintiff's complaint is dismissed to the extent that it seeks relief with respect to entries for which it was not the importer or did not otherwise pay any cash deposits.


                                                        /s/ Claire R. Kelly
                                                        Claire R. Kelly, Judge


Dated: April 5, 2019
        New York, New York